UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMIR MOUKDAD,

                    Plaintiff,

    – *against* –

NYU LANGONE HEALTH SYSTEM,
NYU LANGONE HOSPITALS, NYU
LANGONE MEDICAL CENTER,
AUSTIN BENDER, YASIN AZAD,
RAJENDRA RAM, BETH COOPER,
JUSTINE HORNEDO, and ERIC
FIXSEN,

                    Defendants.

**OPINION & ORDER**

25-cv-02939 (ER)

RAMOS, D.J.:

Samir Moukdad brings this action against NYU Langone Health System, NYU
Langone Hospitals, NYU Langone Medical Center (collectively "NYU"), Austin Bender,
Yasin Azad, Rajendra Ram, Beth Cooper, Justine Hornedo, and Eric Fixsen (collectively
"individual Defendants," and together with NYU, "Defendants"). Doc. 1. He alleges
that Defendants discriminated against him because of his gender, disability, and caregiver
status, failed to provide him with reasonable accommodations for his disability, failed to
engage in an interactive process, and retaliated against him because of his opposition to
the discrimination. *Id*.

Pending before the Court is Defendants' motion to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6). Doc. 13. For the reasons set forth below, the motion is
GRANTED in part and DENIED in part.

I.    **BACKGROUND**

    **A. Factual Background**

Moukdad was a male X-ray technologist employed by NYU Langone Health
System d/b/a NYU Langone Health. Doc. 1 ¶ 3. He is a father and shares primary
caregiving responsibilities for his daughter with his ex-spouse. *Id*. The individual

Defendants are employees of NYU:  Austin Bender ("Bender") is a senior director of the employee and labor relations department,  *Id*. ¶ 5; Yasin Azad ("Azad") is an X-ray manager and was Moukdad's immediate supervisor, *Id*. ¶ 6; Rajendra Ram ("Ram") is an assistant director of radiology and was previously Moukdad's immediate supervisor, *Id*. ¶ 7; Beth Cooper ("Cooper") is a director of the employee and labor relations department, *Id*. ¶ 8; Justine Hornedo ("Hornedo") is a manager of the employee and labor relations department, *Id*. ¶ 9; and Eric Fixsen ("Fixsen") is a radiology administrator. *Id*. ¶ 10.

### 1.  *Moukdad's Accommodation Requests*

NYU has a mandation policy, which allows them to mandate an employee to work overtime by providing notification before the end of the employee's scheduled shift.  *Id*. ¶¶ 18–19.  Not all employees are subject to this policy.  *Id*. ¶ 22.  NYU maintains a list of eligible employees and assigns them mandatory shifts in order, from the top of the list to the bottom.  *Id*. ¶¶ 20–21.  It goes back to the top of the list after the list is exhausted.  *Id*. ¶ 21.  Employees can be removed from the list both temporarily and permanently.  *Id*. ¶ 24.  Allegedly, NYU has granted some female employees exemptions from the mandatory shifts for reasons including FMLA leave for childcare responsibilities.  *Id*. ¶ 25.  Employees can also ask volunteers to take their mandatory shifts.  *Id*. ¶ 31.

Defendants' alleged violations started when Moukdad was going through a contested divorce.  *Id*. ¶ 32.  The divorce proceedings caused him stress and anxiety, leading to an anxiety disorder diagnosis.  *Id*. ¶¶ 37–38.  The divorce proceedings required him to be physically present at court hearings and custody exchanges ordered by the court, which sometimes conflicted with the mandatory shifts.  *Id*. ¶¶ 33–39.  In February 2022, Moukdad applied for an accommodation exempting him from the mandatory shifts because the extra shifts exacerbated his anxiety and conflicted with his obligation to attend divorce hearings and court ordered custody exchanges.  *Id*. ¶ 39.  Moukdad was given a temporary accommodation for thirty days.  *Id*. ¶ 40.  In May 2022, Moukdad

submitted medical documentation regarding his anxiety disorder and requested further accommodation. *Id*. ¶¶ 42–46. This request was rejected by Cooper on the ground that the documentation did not come from a doctor who specialized in anxiety or similar conditions. *Id*. ¶ 43. Moukdad directed Cooper to NYU's policy, which did not require the doctor to be a specialist. *Id*. ¶ 44. Moukdad also offered to make his doctor available to answer any question Cooper might have. *Id*. ¶ 45. But Cooper did not reverse her decision or conduct any further inquiry. *Id*. ¶ 46.

In August 2022, Moukdad requested to change his work schedule to 7 am to 3pm because of the ongoing divorce proceedings, and was given an accommodation for six months. *Id*. ¶¶ 47–48. Following this six-month period, Moukdad had to provide "ample notice" to the human resources department each time his mandatory shift conflicted with a court order. *Id*. ¶¶ 49–52. Moukdad offered to give the department his schedule in advance but was refused. *Id*. ¶ 51. According to Moukdad, it was impossible for him to give ample notice about the conflicts because employees can be notified of the mandatory shifts any time up until the end of their regular shifts. *Id*. ¶ 56. In addition, unlike female employees who were granted accommodations and employees who found volunteers to cover for them, Moukdad would remain at the top of the list after he was excused from a mandatory shift, making him the first to be selected the next time mandation was required. *Id*. ¶¶ 54–55. Moukdad decided to ask for a more permanent accommodation because his caregiving responsibilities would continue after the divorce was finalized. *Id*. ¶ 60. In addition, the concern about having to choose between his job and his caregiving responsibilities exacerbated Moukdad's anxiety. *Id*. ¶ 61. But Moukdad's request for a more permanent accommodation was rejected by his supervisors, Azad and Ram. *Id*. ¶¶ 62–66. They suggested that Moukdad have someone else pick up his daughter. *Id*. ¶ 63.

### 2. *April 2023 Discipline*

In April 2023, Moukdad presented Azad and Ram with a letter from his attorney Molly Zamoiski, indicating that Moukdad needed to be present for a child custody exchange and that his daughter was sick and needed to be taken to the hospital. *Id*. ¶¶ 67–69. Ram questioned whether the letter was actually from an attorney because "it [was] from somebody named Molly." *Id*. ¶ 76.

Azad told Moukdad that other employees complained when he was excused from mandation. *Id*. ¶ 86. Ram also indicated that it was unfair to put the burden on other employees. *Id*. ¶ 83. Moreover, Ram warned Moukdad that his absence had become a pattern and would be considered in "determining punishment for him." *Id*. ¶ 82. Azad also asked Moukdad to give ample notice about future conflicts with mandation, otherwise Moukdad would risk losing his job. *Id*. ¶¶ 77–78. In the end, Moukdad was excused from the particular shift but given a written warning. *Id*. ¶ 70.

### 3. *March 2024 Discipline*

Approximately one year later, in March 2024, Moukdad reached out to Bender in human resources and requested an accommodation from a mandatory shift because there was a court ordered custody exchange and his daughter was ill. *Id*. ¶¶ 87–89, 91. Bender, who was unaware of Moukdad's accommodation record, granted the request, excused him for that day, and emailed his supervisor Azad about the decision. *Id*. ¶¶ 92–93. Azad then contacted Bender and informed him of Moukdad's prior accommodation requests. *Id*. ¶ 94. As a result, Bender revoked the accommodation, indicating that Defendants would no longer excuse Moukdad for "child pick-up," even if it was court ordered. *Id*. ¶¶ 94–96.

Following the revocation, Azad and Ram had a telephone conversation with Moukdad, which Moukdad recorded, regarding this request. *Id*. ¶¶ 99, 121. After the call, Moukdad received written warnings for his attendance in the mandation program and for using vulgar language during the call. *Id*. ¶ 107. Moukdad denied using vulgar

language. *Id.* ¶ 106. Another meeting was held in April 2024 to discuss the discipline. *Id.* ¶ 109. During the meeting, Ram urged Moukdad to provide advance notice about the conflicts or "figure out what is going on in [his] life." *Id.* ¶ 116. He told Moukdad that the court orders were not an excuse for missing the mandatory shifts because someone else could pick up Moukdad's daughter. *Id.* ¶ 114. The discipline imposed for using vulgar language was also discussed during the meeting and eventually revoked after Moukdad presented the recording of the phone call, proving no such language was used. *Id.* ¶¶ 120–24.

### 4. *State Court Action and Subsequent Meetings*

On June 24, 2024, Moukdad brought an action against NYU, Bender, Azad, Ram, Copper, and Hornedo in New York state court, alleging caregiver status discrimination pursuant to New York City Human Rights Law ("NYCHRL"), and retaliation pursuant to New York State Human Rights Law ("NYSHRL"). *Id.* ¶¶ 125–30.[1]

On August 30, 2024, Moukdad met with Fixsen, the radiology administrator. *Id.* ¶ 131. Fixsen acknowledged that the mandation policy could be changed through a creative solution and indicated that he was going to discuss it with Ram and Azad. *Id.* ¶¶ 131–42.

On September 18, 2024, Azad met with Moukdad for his annual performance review. *Id.* ¶ 143. Moukdad received excellent feedback on his work. *Id.* ¶¶ 144–55. Among other things, Azad said Moukdad did not have any problem with attendance or punctuality. *Id.* ¶ 149. Azad only asked Moukdad to pay attention to the March 2024 discipline and work on communication, workplace culture, and positivity. *Id.* ¶¶ 144–55.

---

[1] This action was voluntarily dismissed on April 9, 2025, the day the instant federal action was filed. *Moukdad v. NYU Langone Health System, et al.*, No. 155747/2024 (Sup. Ct. N. Y. Cnty. filed June 24, 2024).

### 5. *September 2024 Discipline*

Moukdad was required to complete a necessary 10-year licensure exam before the end of September 2024. *Id*. ¶¶ 156–57. On September 17, 2024, he asked Azad about taking a contractual day off on September 24, which was provided for in his union contract, to take the exam. *Id*. ¶¶ 158–59. Azad responded that there was no such contractual right and advised him to use a vacation day to take the exam. *Id*. ¶ 160. Moukdad then requested to take September 24 off as a vacation day as Azad instructed. *Id*. ¶¶ 163–64. His request, however, was rejected a few days later because Azad had already granted too many people off for that day. *Id*. Moukdad moved his exam to September 25, *id*. ¶ 168, but as he already had a doctor's appointment scheduled on that day, he took the day off pursuant to the New York City's Earned Safe and Sick Time Act ("ESSTA") on the advice of his union representative. *Id*. ¶¶ 169–72. On September 25, he went to his doctor's appointment and took the exam at home. *Id*. ¶¶ 174–75. It was after Moukdad rescheduled his exam that Azad informed him that he actually did have a contractual right to take days off for the exam. *Id*. ¶ 171.

Pursuant to the ESSTA, employers may not inquire about the use of ESSTA time until an employee misses three consecutive days. *Id*. ¶ 176. But Azad inquired about Moukdad's absence. *Id*. ¶ 177. After Moukdad told him about the sick leave and offered to provide the doctor's note, he searched through Moukdad's emails and found an email where Moukdad discussed taking September 25 off to take the exam. *Id*. ¶ 179. Azad accused Moukdad of lying about his day off and issued a written warning against him. *Id*. ¶¶ 180, 185.

### 6. *Termination*

Moukdad was terminated on October 11, 2024. *Id*. ¶ 184. The termination letter cites the discipline imposed in March and September 2024 as the basis for the termination. *Id*. ¶ 185. Moukdad filed a grievance concerning his termination. *Id*. ¶ 186. A grievance hearing was held on October 30, 2024. *Id*. ¶ 187. During the hearing, Azad

6

admitted that the hospital has provided female employees with FMLA accommodations from mandatory shifts.  *Id*. ¶ 194.  A decision affirming Moukdad's termination was issued on November 4, which Moukdad asserts fails to adequately address the facts and arguments he presented.  *Id*. ¶¶ 201–02.

### B.  Procedural Background

Moukdad filed the instant action on April 9, 2025, alleging gender discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") (Count 1); retaliation pursuant to Title VII (Count 2); retaliation pursuant to the Americans with Disabilities Act of 1990 ("ADA") (Count 3); gender discrimination pursuant to the NYSHRL (Count 4); disability discrimination pursuant to the NYSHRL (Count 5); retaliation pursuant to the NYSHRL (Count 6); failure to accommodate disability pursuant to the NYSHRL (Count 7); gender discrimination pursuant to the NYCHRL (Count 8); caregiver status discrimination pursuant to the NYCHRL (Count 9); disability discrimination pursuant to the NYCHRL (Count 10); failure to accommodate disability pursuant to the NYCHRL (Count 11); failure to engage in an interactive process pursuant to the NYCHRL (Count 12); retaliation pursuant to the NYCHRL (Count 13); retaliation pursuant to the ESSTA (Count 14); and retaliation pursuant to the New York Labor Law ("NYLL") (Count 15). Doc. 1.

 On August 13, 2025, Defendants moved to dismiss all claims except for counts 9, 12, 14, and 15.  Doc. 13.

## II.    LEGAL STANDARD

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## III.    DISCUSSION

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

### A.  Gender Discrimination

Moukdad alleges that Defendants discriminated against him because of his gender in violation of Title VII, the NYSHRL, and the NYCHRL. Doc. 1. The Court finds that Moukdad fails to plausibly plead these claims.

#### 1.  *Title VII Claim*

Title VII prohibits employers from discriminating against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of

such individual's gender.  42 U.S.C. § 2000e-2(a)(1).  To state a claim for gender discrimination under Title VII, a plaintiff must allege:  (1) membership in a protected class, (2) qualification for the position held, (3) an adverse employment action, and (4) that the circumstances surrounding that action give rise to an inference of discrimination. *Mumin v. City of New York*, 760 F.Supp.3d 28, 53 (S.D.N.Y 2024); *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000).

Here, the parties dispute only the last element, whether the facts alleged sufficiently support an inference of discrimination.  An inference of discrimination can be drawn from disparate treatment, or actions or remarks reflecting discriminatory animus of decisionmakers.  *Chertkova v. Connecticut General Life Insurance Co.*, 92 F.3d 81, 91 (2d Cir. 1996); *see also Salas v. New York City Department of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018).  To show disparate treatment, a plaintiff must normally identify specific comparators who are similarly situated but receive preferential treatment.  *Mumin*, 760 F.Supp.3d at 54.  At the pleading stage, the plaintiff bears only a "minimal burden" of establishing an inference of discrimination.  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

As a preliminary matter, Moukdad does not plausibly allege disparate treatment because he fails to identify a specific similarly situated female comparator.  *See Mumin*, 760 F.Supp.3d at 54.  He only asserts in a conclusory fashion that NYU "granted female employees exemptions or accommodations from the [m]andation [p]olicy, including FMLA leave for childcare responsibilities" and "[o]ne female employee was exempt from the overtime list at the beginning of her employment."  Doc. 1 ¶¶25–26.  Even at the pleading stage, however, it is insufficient to identify only a generic class of similarly situated employees.  *Paupaw-Myrie v. Mount Vernon City School District*, 653 F. Supp. 3d 80, 99 (S.D.N.Y. 2023) (citing *Henry v. NYC Health & Hospital Corporation*, 18 F. Supp. 3d 396, 408 (S.D.N.Y 2014)).  A specific comparator is necessary to demonstrate disparate treatment.  *Mumin*, 760 F.Supp.3d at 54.  Although Moukdad identifies an

unnamed female employee who allegedly was exempt from the overtime list, Doc. 1 ¶ 26, he does not include specific facts to plausibly allege that this female employee was similarly situated to him.  Doc. 13 at 13–14.

As Moukdad argues, identifying a specific comparator is not the only method to establish an inference of discrimination.  *Id*. at 11.  But Moukdad also fails to plausibly plead an inference of discrimination by showing discriminatory animus.  *See Chertkova*, 92 F.3d at 91.  Moukdad argues that the denial of his accommodation requests for his anxiety disorder demonstrates gender discrimination because anxiety disorder is stereotypically associated with women.  Doc. 16 at 13.  He further argues that standing alone, the denial of his accommodation requests for childcare responsibilities and the discipline he received reveal Defendants' stereotype that men should not be caregivers of their children.  *Id*. at 13–16.  He also argues that Azad's suggestion that Moukdad have someone else pick up his daughter reflects a gender stereotype.  *Id*. ¶ 63.  And he argues that Defendants did not believe someone named "Molly" was Moukdad's lawyer because Defendants assumed women could not be lawyers.  Doc. 1 ¶¶ 73–76.  In addition, he argues that the reason Azad asked him to "work on culture" in the operating room is that he refused to conform to the gender stereotype.  *Id*. ¶ 155.  The Court concludes these facts do not support an inference of gender discrimination.

Conduct and remarks reflecting prejudicial stereotypes of a protected group can suggest discriminatory intent.  However, courts generally find conduct and remarks discriminatory when viewed in context, that is, when such conduct and remarks are clearly premised on protected characteristics.  *See e.g.*, *Miller v. Levi & Korsinsky, LLP*, 695 F. Supp. 3d 397, 411 (S.D.N.Y. 2023) (finding inference of discrimination when the female plaintiff's male supervisor asked her to call her husband to negotiate the bonus contract for her and stated that the supervisor's wife should be fired because the supervisor wanted her to be at home with their children); *Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 303, 311 (S.D.N.Y. 2016) (finding inference of

discrimination when the male supervisor called the female plaintiff "bossy," physically touched her in inappropriate manner, and asked her to come to him "so he could rape her"); *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 70 (S.D.N.Y. 2015) (finding inference of gender discrimination when the supervisor of the plaintiff, a male employee, commented that she would like to "have a staff of all women" multiple times and stated that she had created a "girl power" team after the plaintiff's termination); *Paupaw-Myrie*, 653 F. Supp. 3d at 97–98 (finding no inference of racial discrimination when the non-Native American co-worker asked the plaintiff, a Black woman with Native American origin, to grow out her hair relaxer); *Jones v. City of New York*, No. 14-cv-0826(CBA)(RLM), 2015 WL 502227, at *5 (E.D.N.Y. Feb. 5, 2015) (holding that it is insufficient to raise an inference of discrimination based on the defendant's unfriendly comments on the plaintiff's hair weave, which is often worn by Black women).

In the present case, none of the foregoing conduct, even viewed in context, is necessarily premised on Moukdad's gender. A plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." *Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir. 1999). Moukdad's subjective feelings here are insufficient to support an inference of discrimination.

Moukdad also argues that his termination was plausibly motivated by gender discrimination because he had strong work performance. Doc. 1 ¶ 218. But to allege inference of discrimination, plaintiffs cannot simply rely on the fact that they were terminated. *McDermott v. New York City Housing Development Corp.*, No. 10-cv-2029(HB), 2011 WL 167836, at *3 (S.D.N.Y. Jan. 18, 2011); *see also Amador v. Macy's E.-Herald Square,* No. 12-cv-4884(MHD), 2014 WL 5059799, at *19 (S.D.N.Y. Oct. 3, 2014). Facts suggesting that the termination was motivated by a plaintiff's protective status have to be pled. *Id*. Moukdad fails to sufficiently allege such facts. Thus, Moukdad's claim for gender discrimination pursuant to Title VII is dismissed.

### 2. NYSHRL and NYCHRL Claims

The NYSHRL and NYCHRL also prohibit discrimination based on an employee's gender. N.Y. Exec. Law § 290; N.Y.C. Admin. Code § 8-107(1)(a). To state a claim for gender discrimination under the NYSHRL and NYCHRL, plaintiffs need only to show that they were treated less well because of their gender. *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (clarifying the standard for gender discrimination under the NYCHRL); *Mumin*, 760 F.Supp.3d at 55 (holding that after the 2019 amendment, the NYSHRL adopts the same lenient standard as the NYCHRL). Unlike Title VII, a plaintiff can satisfy the requirements of the NYSHRL and NYCHRL by showing differential treatment of any degree, and a materially adverse employment action is not required. *Gorokhovsky v. New York City Housing Authority*, 552 F. App'x 100, 102 (2d Cir. 2014) (summary order). As Moukdad argues, "even a single comment" can be actionable under the NYSHRL and NYCHRL. *Mihalik*, 715 F.3d at 110; Doc. 16 at 22. But, as under Title VII, a plaintiff must still allege facts sufficient to support an inference that gender is a motivating factor for the inferior treatment. *Bell v. McRoberts Protective Agency, Inc.*, No. 15-cv-0963 (JPO), 2016 WL 7192083, at *5 (S.D.N.Y. Dec. 12, 2016).

The parties dispute only whether gender is plausibly pled as a motivating factor behind the alleged inferior treatment Moukdad was subjected to. Doc. 13 at 13–15; Doc. 16 at 21; Doc. 17 at 4–6. For the purpose of the NYSHRL and NYCHRL, "a discriminatory motive can be shown either by pleading direct evidence of discrimination, including comments indicating prejudice on account of a protected characteristic, or by pleading facts showing that comparators were treated better than the plaintiff was." *Bautista v. PR Gramercy Square Condominium*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) (quoting *Wilson v. JPMorgan Chase Bank, N.A.*, No. 20-cv-4558 (JMF), 2021 WL 5179914 (S.D.N.Y. Nov. 8, 2021)). Moukdad fails to adequately allege either. To allege disparate treatment pursuant to the NYSHRL and NYCHRL, a plaintiff has to show that

12

the coworker comparators are similarly situated to the plaintiff in all material respects. *Varughese v. Mount Sinai Medical Center*, No. 12-cv-8812(CM)(JCF), 2015 WL 1499618, at *40 (S.D.N.Y. Mar. 27, 2015), aff'd, 693 F. App'x 41 (2d Cir. 2017); *Mumin*, 760 F. Supp. 3d at 52–53.  Although Moukdad alleges that female employees received accommodations including FMLA leave for childcare, and one unnamed female employee was exempt from the mandatory shift from the beginning of her employment, Doc. 1 ¶¶25–26, he fails to identify how the comparators are similarly situated to him in all material respects.  *See id*.

Moreover, Moukdad also fails to plausibly allege direct evidence of gender discrimination.  He presents some facts that allegedly show Defendants' discriminatory animus, including the denial of his accommodation requests for his anxiety disorder, Doc. 16 at 13, the comment by Azad and Ram that he should have someone else pickup his daughter, Doc. 1 ¶¶ 63, Defendants' disbelief that someone named Molly was his lawyer, *Id*. ¶¶ 74–76, and the feedback from Azad that he should work on "culture" in the operating room, *Id*. ¶ 151.  However, these actions are not necessarily premised on the allegedly protective characteristic, gender, as the NYSHRL and NYCHRL require.  *See Bautista*, 642 F. Supp. 3d at 428 (holding that direct evidence of discrimination includes "comments indicating prejudice on account of a protected characteristic"); *see Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019) (finding failure to allege inference of disability discrimination under the NYCHRL when the plaintiff alleges that his superior denied him requested leave without pay, directed him to move 54 boxes without assistance despite the superior's knowledge of his disability, and sent him e-mails with great frequency); *see also Raji v. Societe Generale Americas Securities LLC*, No. 15-cv-1144, 2018 WL 1363760, at *5 (S.D.N.Y. Feb. 28, 2018) (recognizing discriminatory motive under the NYCHRL when the plaintiff's superiors repeatedly referred to him by ethnic slurs and questioned on his sexuality).  Even viewed in the light most favorable to Moukdad, the facts alleged do not give rise to the inference that

13

Moukdad was treated less well, *because of* his gender.  Thus, the Court dismisses Moukdad's gender discrimination claims pursuant to the NYSHRL and NYCHRL.

### B.  Failure to Accommodate Disability

Moukdad alleges that Defendants failed to accommodate his disability in violation of the NYSHRL and NYCHRL.  Doc. 1.  He plausibly pleads these claims. To state a failure to accommodate claim under the NYSHRL and NYCHRL, a plaintiff is required to show that:  (1) the plaintiff is a person with a disability under the meaning of the NYSHRL or NYCHRL; (2) an employer covered by the statute had notice of the plaintiff's disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 405–06 (S.D.N.Y. 2017).  The parties dispute only whether Defendants refused to make reasonable accommodations.  Defendants argue that they provided Moukdad with reasonable accommodations by approving his requests to attend his divorce proceedings, which were the source of his anxiety disorder.  Doc. 17 at 6.  Moukdad alleges that NYU refused to accept his schedule in advance or give him a more permanent accommodation.  Doc. 1 ¶¶ 50–52.  Instead, NYU asked him to request an accommodation each time there was a conflict between the mandation policy and a court order with "ample notice."  *Id*. However, under NYU's mandation policy, an employee can be notified that they have to work overtime up until the end of their regular shifts.  *Id*. ¶ 56.  According to Moukdad, because of this, it was impossible for him to give "ample notice" of a conflict.  *Id*.  In addition, he adequately alleges that it was not impossible to reasonably accommodate him.  Fixsen, the radiology administrator, admitted that the mandation policy was not rigid and could be improved.  *Id*. ¶¶ 133–34.  These facts support a plausible allegation that Defendants refused to grant Moukdad a reasonable accommodation.

### C. Disability Discrimination

Moukdad claims that Defendants subjected him to disability discrimination in violation of the NYSHRL and NYCHRL. *Id.* ¶¶ 243–49, 283–90. He plausibly pleads these claims.

Under the NYSHRL and NYCHRL, plaintiffs must show that they are treated less well, at least in part because of a discriminatory reason. *Piligian v. Icahn School of Medicine at Mount Sinai*, 490 F. Supp. 3d 707, 718 (S.D.N.Y. 2020).

Here, the parties disagree on whether Moukdad plausibly pleads that the adverse treatment he was subjected to, including discipline and termination, was motivated by disability discrimination. Doc. 1 ¶¶ 246, 286; Doc. 13 at 8; Doc. 16 at 21. An employer's failure to hold a constructive dialogue about the possibility of reasonable accommodations may indicate discriminatory intent under the NYSHRL and NYCHRL. *See Fasanello v. United Nations International School*, No. 19-cv-5281 (GHW), 2022 WL 861555, at *18 (S.D.N.Y. Mar. 23, 2022); *see also Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) (an employer's failure to engage in a good faith interactive process can be introduced as evidence of disability discrimination under the ADA). Moukdad alleges that Defendants failed to engage in any interactive process regarding his disability.[2] Doc. 1 ¶¶ 46, 205. As the Court has concluded that Moukdad plausibly alleges that Defendants failed to grant him a reasonable accommodation, Defendants' failure to engage in interactive dialogue plausibly indicates discriminatory intent. *See Fasanello*, 2022 WL 861555 at *18. Moukdad pleads sufficient facts to allege his disability discrimination claims.

---

[2] Indeed here, Defendants do not move to dismiss Count 12, alleging a failure to engage in an interactive process pursuant to the NYCHRL. Doc. 13.

### D. Retaliation

Moukdad plausibly alleges that NYU engaged in retaliation in violation of the ADA and Title VII, and that all Defendants engaged in retaliation in violation of the NYSHRL and NYCHRL.  Doc. 1.

#### 1.  *ADA and Title VII Retaliation Claims*

To survive a motion to dismiss, a complaint for retaliation under the ADA and Title VII must allege facts plausibly showing that:  (1) the plaintiff participated in a protected activity; (2) the defendant knew of the protected activity; (3) an adverse employment action was taken; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Witcher v. New York City Department of Education*, No. 23-465, 2024 WL 3220264, at *2 (2d Cir. June 28, 2024) (summary order); *see also King v. New York City Department of Education*, No. 23-cv-7622 (ER), 2025 WL 2083831, at *11 (S.D.N.Y. July 24, 2025) (addressing retaliation claims under Title VII and ADA under the same standard).  A causal connection can be established either indirectly, by showing that the protected activity was followed closely by adverse employment action, or directly, through evidence of retaliatory animus directed against the plaintiff.  *Gordon v. N.Y.C. Board of Education*, 232 F.3d 111, 117 (2d Cir. 2000).

The protected activities Moukdad alleges for his ADA retaliation claim include the March 2024 accommodation request and the state court action he filed on June 24, 2024. His allegations for protected activities under Title VII include requests for accommodations, the internal complaint to supervisors and human resources about disparate treatment,[3] contacting his union regarding his rights, and filing an action in the state court.  Doc. 1 ¶ 223.  He also alleges that he was subject to adverse employment action within the meaning of the ADA based on Defendants' denial of his accommodation

---

[3] Moukdad argues that the protected activities he engaged in include "complaining internally to supervisors (including Defendants Ram and Azad) and [human resources] about disparate treatment." Doc. 1 ¶ 223. But no relevant facts concerning these protect activities were alleged in the complaint.

requests, the discipline he received, and termination of his employment. *Id.* For adverse employment actions under Title VII, he alleges denial of accommodation requests, false accusation of using vulgar language, increased scrutiny and hostile comments, interference with use of contractual and statutory leave, disciplinary actions taken against him, and termination of his employment. *Id.* ¶ 225.

Moukdad sufficiently pleads the retaliation claims under the ADA and Title VII. Defendants argue that Moukdad's accommodation requests are not protected activities because they were made for his personal obligations, not for his anxiety disorder. Doc. 13 at 11–12. But these two purposes are not mutually exclusive. The divorce proceedings and the concern that he may not be able to take care of his daughter because of the mandatory shifts allegedly led to Moukdad's anxiety disorder. Doc. 1 ¶¶ 37–39, 61. The accommodation would have excused him from the mandatory shifts and thus may have addressed the source of his anxiety disorder. Defendants acknowledge this connection in their memorandum of law. Doc. 17 at 4–5. To the extent that the accommodation could relieve Moukdad's anxiety disorder, the request for accommodation is a protected activity under the ADA.

The parties also dispute whether there is a causal connection between the protected activities and the adverse employment actions. Doc. 13 at 12–13; Doc. 17 at 7. Defendants argue that Moukdad fails to allege sufficient temporal proximity to prove causation because among other things, there was a three-month gap between the state court action and his termination. Doc. 13 at 12–13. Courts in this circuit have held that when causation is exclusively established by temporal proximity, three and a half months can be too attenuated. *Marciniak-Domingues v. Massachusetts Institute of Technology*, No. 22-cv-10959 (ALC), 2024 WL 4350826, at *10 (S.D.N.Y. Sept. 30, 2024); *see also Agosto v. New York City Department of Education*, 982 F.3d 86, 104 (2d Cir. 2020). But a three-month gap is just on the outer edge of what courts recognize as sufficient to establish causation. *St. Louis v. New York City Health & Hospital Corporation*, 682 F.

17

Supp. 2d 216, 235 (E.D.N.Y. 2010). More importantly, Moukdad also pleads evidence of retaliatory animus to prove causation directly. *See Gordon*, 232 F.3d at 117. In March 2024, at a meeting regarding the denial of Moukdad's March accommodation request, Azad and Ram accused Moukdad of using vulgar language and disciplined him. Doc. 1 ¶¶ 106–07. This accusation was later proven false by Moukdad's recording of the telephone call. *Id.* ¶¶ 109–24. Although Defendants revoked the discipline after the recording was presented by Moukdad, the false accusation itself supports a finding of retaliatory animus. Moukdad plausibly alleges the causation between the protected activities and the adverse employment actions.

### 2. NYSHRL and NYCHRL Retaliation Claims

To prevail on a retaliation claim under the NYSHRL or NYCHRL, plaintiffs must show that they took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. *Ward v. Cohen Media Publications LLC*, No. 22-cv-6431 (JLR), 2023 WL 5353342, at *13 (S.D.N.Y. Aug. 21, 2023).[4] The NYSHRL and NYCHRL definition of retaliation is broader than that of federal law. *Calise v. Casa Redimix Concrete Corp.*, No. 20-cv-7164 (PAE), 2022 WL 355665, at *5 (S.D.N.Y. Feb. 4, 2022). A retaliation claim is automatically stated under the NYSHRL and NYCHRL if it is stated under the ADA. *Id.* at 7; *see also Limauro v. Consolidated Edison Company of New York, Inc.*, No. 20-cv-3558 (CM), 2021 WL 466952, at *4 (S.D.N.Y. Feb. 9, 2021). Moukdad pleads a viable retaliation claim under the ADA and Title VII, and thus, necessarily pleads a viable such claim under the NYSRHL and NYCHRL.

---

[4] NYSHRL was amended in 2019. The post-amendment NYSHRL adopts the same retaliation standard as NYCHRL. *Arazi v. Cohen Bros. Realty Corp.*, No. 20-cv-8837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022); *see also McDaniel v. Scotch & Soda Retail, LLC*, No. 23-cv-7859 (DLC) (RFT), 2024 WL 5456912, at *6 (S.D.N.Y. Nov. 22, 2024), report and recommendation adopted, No. 23-cv-7859 (DLC), 2025 WL 401108 (S.D.N.Y. Feb. 4, 2025).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically:

- Moukdad's gender discrimination claims under Title VII, the NYSHRL, and NYCHRL are dismissed (Counts 1, 4, and 8);

- Moukdad's failure to accommodate claims and disability discrimination claims pursuant to the NYSHRL and NYCHRL; and the retaliation claims pursuant to the ADA, Title VII, the NYCHRL and NYSHRL are not dismissed.

The parties are directed to appear for a status conference on April 23, 2026 at 11:30 a.m. in Courtroom 619 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 13.


It is SO ORDERED.


Dated:    March 18, 2026
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

19